## McIntosh v. Commonwealth.

(Decided April 25, 1930.)

A. H. PATTON for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Green McIntosh, and his son, Ed McIntosh, were jointly indicted for the murder of Garrett Turner, Green McIntosh as principal and Ed McIntosh as aider and abettor. On his separate trial Green McIntosh was convicted of the crime of manslaughter, and his punishment fixed at confinement in the penitentiary for a period of 21 years.

He urges on this appeal that the judgment should be reversed because (1) the verdict is flagrantly against the evidence; (2) the court erred in excluding certain

testimony; (3) the jury was guilty of misconduct; and (4) the court erred in instructing the jury.

Appellant was a tenant on the farm of Garrett Turner. He had worked for Turner, and rendered a bill for $35. Turner had paid him $10, but claimed the work was reasonably worth only $25. On Sunday morning, June 16, 1929, Turner left his home to go to the back part of his farm. It was necessary for him to pass appellant's home, and, before leaving, he made out a check for $15 payable to appellant. He was riding a mule, and stopped at appellant's home and called him out. He tendered the check to appellant in payment of the balance due for the work that had been performed by appellant, and a dispute arose between them, which resulted in the death of Turner. His body was found lying in the road in front of appellant's home. He had been shot at close range with a shotgun, the shot entering about the center of the back and ranging upward. Immediately after the killing appellant and his son, Ed McIntosh, started down the road toward Booneville. As they passed Turner's home, appellant called to one of Turner's children who was in the yard, and said: "I killed your daddy up yonder a minute ago." Turner's wife and sister-in-law were at Turner's house, and claimed they heard appellant make this statement. Appellant at the time was carrying the shotgun. He later met Turner's brother and one or two others, and informed them that he had shot Turner. The only eyewitnesses to the killing were appellant, his son, and his daughter. The testimony of appellant and his children was to the effect that Turner came to his home on the Sunday morning in question and called him out, that Turner tendered him a check which was made out for the sum of $15, and that a dispute arose as to the amount due, and that Turner dismounted from the mule which he was riding and said: "Damn you, I am going to pay you now," and picked up a stick and began to strike at appellant. Appellant grappled with Turner, and, while attempting to hold him and prevent Turner from striking him with the stick, Ed McIntosh came from the house with a shotgun and shot Turner in the back, killing him instantly. Appellant testified that he did not know of his son's presence until the shot was fired.

The evidence for the commonwealth showed that the shot was fired at close range, and that it ranged upward,

and that deceased's right arm was bruised and lacerated in two places as though from a fall. There was also evidence to the effect that there was ill feeling on the part of appellant toward Turner, and that he had made a threat to settle with Turner. While the evidence as to how the killing occurred is meager and not altogether satisfactory, it was sufficient to warrant submission of the case to the jury and to sustain the verdict.

Appellant denied that he stated to members of Turner's family and the others who testified on that point that he had shot the deceased, and he offered to prove by a number of witnesses that shortly after the killing he told them that his son, Ed McIntosh, had fired the shot. The court properly refused to admit this testimony. The statements sought to be introduced were merely self-serving declarations.

One of the grounds relied on for a new trial was alleged separation of the jury, and the court heard proof on this ground which is incorporated in the bill of exceptions. It appears that, after the case had been submitted to the jury, and before a verdict had been returned, the jury and the sheriff, in whose custody they had been placed, were in a room in a hotel. This room opened onto a porch. One of the jury stepped out of the room onto the porch and remained there a few minutes. The proprietor of the hotel and his son were sitting on the porch. The door remained open, and the juror at all times was within a few feet of the sheriff and the other members of the jury. All persons present testified that nothing was said about the case, and the proprietor of the hotel testified that the only remark made by the juror while he was on the porch was concerning the weather. The attorney for appellant passed along the street in front of the hotel and observed the juror on the porch. This occurrence took place about 6:30 a. m., and the verdict was returned about 9:30 a. m., on the same day. No motion to discharge the jury was made, and the occurrence was not called to the attention of the court until after the verdict was returned. The evidence heard by the court on this ground for a new trial discloses that the juror remained in full view of the sheriff, and that no communication passed between him and any outsider about the case on trial.

In Wynn v. Commonwealth, 188 Ky. 557, 222 S. W. 955, 956, where a similar contention was made, we said:

"It is well recognized that a jury in a criminal case, in charge of the sheriff, may properly be taken to places of amusement, to restaurants, and the like, and that the temporary withdrawal of a juror from the immediate presence of his fellow jurors or the sheriff will not constitute such separation as will affect the verdict where, as in the present instance, the juror of whom complaint is made was during the whole evening within plain view of the sheriff and the remaining jurors, and at a distance of not exceeding 30 or 40 feet."

It was further held in that case that the mere opportunity to converse with the juror, nothing else appearing, is not sufficient to secure a new trial. To the same effect see Seymour v. Com., 220 Ky. 348, 295 S. W. 142; Clemens v. Com., 224 Ky. 370, 6 S. W. (2d) 483; Arnold v. Com., 194 Ky. 421, 240 S. W. 87; Crenshaw v. Com., 227 Ky. 223, 12 S. W. (2d) 336. Furthermore, appellant, with knowledge of the alleged misconduct on the part of the juror before the verdict was rendered, failed to call it to the attention of the trial court, and therefore waived his right to rely on the alleged misconduct as a ground for a new trial. As said in Drake v. Drake, 107 Ky. 32, 52 S. W. 846, 21 Ky. Law Rep. 636, and quoted with approval in Black v. Commonwealth, 154 Ky. 144, 156 S. W. 1043, and Caudill v. Commonwealth, 217 Ky. 403, 289 S. W. 371, 373, "a party should not, with knowledge of misconduct on the part of the jury, conceal it from the court, and take the chance of a verdict in his favor, with the expectation of having it set aside if adverse to him."

It is finally insisted that the instructions were erroneous, in that they authorized the jury to find the appellant guilty if they believed Ed McIntosh shot the deceased and Green McIntosh was present aiding and abetting him, since Green McIntosh was not indicted for aiding and abetting, but was indicted only as a principal, and his codefendant, Ed McIntosh, was charged in the indictment with aiding and abetting. It is insisted for the commonwealth that this ground cannot be considered on appeal, since it was not relied on in the motion and grounds for a new trial in the lower court, but, waiving that question, the instructions were proper.

We have frequently held that an aider and abettor is a principal, and, that being true, appellant is in the same attitude as if he and his son, Ed McIntosh, had been jointly indicted as principals. In Steeley v. Commonwealth, 129 Ky. 524, 112 S. W. 655, 33 Ky. Law Rep. 1032, it was held that, where one is indicted as a principal, he may be convicted on the showing that he was commanding, counseling, aiding, advising, or assisting the real perpetrator of the crime. In the case of Benge v. Commonwealth, 92 Ky. 1, 17 S. W. 146, 13 Ky. Law Rep. 308, a number of persons were indicted for murder, and Benge was indicted as aider and abettor. The proof showed that Benge did the killing. The court instructed the jury that they could find him guilty as the actual perpetrator of the deed, although he was indicted as an aider and abettor only. In the course of the opinion the court said:

"There is in law but one crime charged, and the separate parts performed by each constitute in legal contemplation the joint act of all. Each is the agent and instrument of the other. Hence each, although performing different parts, the aiders and abettors being a dependent part, in law is a principal, and is criminally responsible for the act of the other, as well as for his own act. The one charged as principal may be found guilty of aiding and abetting; and the one charged as aider and abettor may be found guilty as principal. This is for the reason that each is the agent and instrument of the other, and his act is the act of the other, and the act of each constitutes but one crime, and each is guilty of the act actually committed by the other. Such act is, in law, the act of each. Hence each is principal as to each act, although he did not actually perpetrate each act; but the act that the other perpetrated was his act, and he is principal as to it. Now, the actual perpetrator of the deed being the agent and instrument of the aider and abettor, for which the latter is criminally responsible, it follows that he is equally responsible under the indictment if he actually perpetrated the deed, instead of the person charged in the indictment to have done so, although he is indicted as aider and abettor only."

198

The only cases in which it has been held improper to instruct on aiding and abetting are cases in which the defendant was alone indicted as principal, and not where the parties either were jointly indicted as principals or as aiders and abettors. Terhune v. Commonwealth, 144 Ky. 370, 138 S. W. 274; Taylor v. Commonwealth, 90 S. W. 581, 28 Ky. Law Rep. 823; Reed v. Commonwealth, 125 Ky. 126, 100 S. W. 856, 30 Ky. Law Rep. 1212; Mulligan v. Commonwealth, 84 Ky. 229, 1 S. W. 417, 8 Ky. Law Rep. 211; Hollin v. Commonwealth, 158 Ky. 427, 165 S. W. 407, L. R. A. 1915E, 608; Deaton v. Commonwealth, 211 Ky. 651, 277 S. W. 1001.

Here the indictment charged that the crime was committed by Green McIntosh and Ed McIntosh, one acting as principal and the other as aider and abettor. As each in law was principal and could be convicted under the indictment for doing the acts that the indictment imputed to the other, the instructions complained of were authorized.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.