## NEW YORK LIFE INS. CO. v. PREJEAN.
### No. 11123.

Circuit Court of Appeals, Fifth Circuit.
May 4, 1945.

Rehearing Denied June 6, 1945.

Richard B. Montgomery, Jr., of New Orleans, La., for appellant.

Gordon Boswell and James C. Henriques, both of New Orleans, La., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellee as plaintiff, alleging death by accidental means, sued the Insurance Company on a policy of insurance on the life of her husband which provided for the payment of the sum of $5,000 upon his death from natural causes, and for double that amount in the event of his death by accidental means. The defendant admitted: That the policy was in force; that the insured was dead; but denied death by accident and on the contrary alleged death by suicide. On the issues thus presented the plaintiff (appellee) had the burden to prove, under the double indemnity provision of the policy, that death of her husband resulted from violent external and accidental means, while the defendant (appellant) had the burden of proving the defense of suicide as same related to the suit for the face value of the contestable, and contested, policy. The jury found for

the plaintiff on the issue of suicide as related to the face of the policy and for the defendant on the issue of the alleged accidental death under the double indemnity provisions of the policy. There was no appeal, or cross appeal, from the judgment, entered pursuant to the verdict of the jury, denying the right to double indemnity, but the appeal is from the judgment—based on the jury's verdict in favor of the plaintiff—adjudging that she was entitled to recover under the non-accidental coverage of the policy. Separate verdicts were rendered by the jury on the two issues.

The insured was found dead in his butcher shop at about 11:30 P. M. on April 29, 1941. His death had resulted from a knife wound of about six inches in length across his throat immediately beneath his lower jaw. When discovered, he was lying on his back and over a bloody knife that was customarily used in the butcher shop. His clothes were not disarranged, and there was money in the cash register, and in the coat pocket, of the deceased. There was no evidence presented of a struggle, foul play, robbery, or murder, nor motive for suicide. The fact that the cut in the throat of the deceased was an incision, or slash, rather than a stab is claimed by the appellant to disprove the theory of death by accident. Deceased had no known enemies. No motive is shown either for his suicide or his murder. The last person who saw him alive was a young lady who worked in a bakery shop, adjacent to the butcher shop, and which was separated therefrom by a glass partition. She testified that Mr. Prejean came into his butcher shop between 8:30 and 9 o'clock that night, smiled and waved at her through the glass partition, and that within three or four minutes thereafter she heard a noise like people moving around, and it seemed like the noise was that of more than one person moving around. But that is all that she saw or heard. A good deal of effort is made in the briefs and in the arguments to establish a theory by trying to interpret the position in which the deceased was lying and the fact that the bloody knife was found underneath his back. We are not impressed with any of these interpretations or deductions, for it is not shown, nor does it appear likely, that the wound produced instant death, and, therefore, the position of the body might have been changed repeatedly after the fatal slice by the jactitations of the body in the throes of death.

The rule is too well established in the Courts of Louisiana, as well as in this Court, to require the citation of authority, that he who alleges that death was caused by suicide has the burden of proving it. The facts of the issuance of the policy and the death of the insured while the policy was in force are admitted in defendant's answer. The defense of suicide is an affirmative one.

Appellant asserts that since the jury found against the plaintiff in her suit to recover double indemnity, the question of accidental death is eliminated, and that, therefore, the jury was reduced to the necessity of finding either that the insured committed suicide or that he was murdered. We do not agree. The jury might well have determined that the plaintiff had failed to carry the burden that was on her to prove accidental death. Such a conclusion does not necessarily foreclose the jury from considering that there might have been an accident even though the plaintiff was not able to prove it by a preponderance of the evidence. Where such issues are concurrently considered by the same jury, the proof adduced by one party in an effort to carry his burden of proof may be considered by the jury in proof or disproof of the factual issue which the other side has the burden to establish, and vice versa.

In considering the matter of whether or not the circumstances pointing to suicide are sufficient to exclude other reasonable hypotheses, death by accidental means might, in the mind of the jury, still remain a reasonable hypothesis, notwithstanding the inability of the plaintiff to carry the burden of proof necessary to convert the hypothesis into a proven fact. The established facts and circumstances here give some support to two or more inconsistent hypotheses. For instance, the circumstances that no person was seen to enter or to leave the butcher shop, that there was no robbery, that there were no known enemies of the deceased, that there was no outcry, that the knife belonged to the deceased, that the wound was an incision rather than a stab, tend to support the theory that the wound was self-inflicted, either by accident or by design; while, on the other hand, the fact that the deceased was not depressed, was in good health, had

116

happy domestic relations, had no pressing financial difficulties, was a strong churchman and of a genial disposition, lend support to the theory of death by accident or by the hand of another. If the proven facts give equal support to two or more inconsistent hypotheses, then the jury has the right to deem neither of them as established, and render its verdict against the party upon whom rests the burden of sustaining one of these hypotheses as against the other. Cf. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819. It was the function of the jury, as the fact-finding body of the Court, to consider all the facts and circumstances, balance inferences, compare presumptions, and weigh the evidence, and locate its preponderance.

"When the question is whether a death was or was not suicidal, it is one for the jury if the evidence is such that reasonable persons, in an impartial and fair exercise of their judgment, may honestly reach different conclusions. The court cannot properly give an instruction involving or requiring a finding that the deceased voluntarily killed himself if there is evidence furnishing any substantial basis for a belief that the death was accidental or caused by the act of another, or for an honest doubt as to its having been voluntarily self caused." Equitable Life Assurance Society v. First National Bank of Union Springs, 5 Cir., 40 F.2d 817, 818.

Since the defendant had the burden of proving suicide by a preponderance of the evidence, there rested upon it the necessity of sustaining its hypothesis of suicide as against the hypothesis of either murder or accident. The defense rested upon circumstantial evidence entirely, and circumstantial evidence, even in a civil case, must not only be consistent with the defendant's theory of suicide, but must fairly and reasonably exclude every other reasonable explanation of the facts. Unless it did that, the burden which rested upon it to prove the suicide was not carried. Cf. Mutual Life Insurance Co. of New York v. Zimmerman, 5 Cir., 75 F.2d 758.[1]

In the present case we know that the insured is dead, and that he died under circumstances that are shrouded in doubt, having a policy of life insurance which was in force and which the Insurance Company should pay unless it can sustain the burden of proving by a preponderance of the evidence that death was from suicide. Whether it sustained that burden or not was definitely a jury question. The jury has found that the defendant did not carry that burden and we should not substitute our judgment for that of the jury.

Affirmed.

[1] See Faulk v. Mutual Life Insurance Co., 160 La. 529, 107 So. 395; Webster v. New York Life Insurance Co., 160 La. 854, 107 So. 599.